# UNITED STATES DISTRICT COURT
## District of Kansas
(Kansas City Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                   **CASE NO. 23-20061-DDC**

ISAAC N. VANO,

        Defendant.

# GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS

The United States of America, by undersigned counsel responds to Defendant Isaac Vano's motion to suppress (doc. 22), which was filed by counsel, and his pro se motion to dismiss (doc. 31), motion for a bill of particulars (doc. 32), and for motion for "relief from shackling" (doc. 33). The motions should be denied for the reasons set forth below.

## I.  Defendant's Motion to Suppress

Defendant's motion to suppress should be denied because Kansas law and United States Supreme Court precedent authorized the search of Defendant's room

under the "special needs" exception to the Fourth Amendment's warrant requirement. Alternatively, the search was justified under the "totality of the circumstances" exception. But, if neither exception applies, then the Court should not suppress the evidence because the seizing agents acted in good faith.

**RELEVANT FACTS**

Defendant Isaac Vano was convicted in two separate Johnson County, Kansas cases. In case 18CR1386 Defendant was convicted of aggravated battery and aggravated assault following a jury trial. The conviction stemmed from an incident in which Defendant found someone who he believed to be trespassing near his residence, held that person at gunpoint, then shot that person in the head while Defendant was on the phone with emergency dispatch. Defendant was sentenced to 32 months imprisonment, followed by 24 months of post-release supervision.

In case 19DV570 Defendant was convicted of aggravated domestic battery stemming from an incident in which Lenexa police officers were dispatched to a disturbance call at a residence where Defendant and his then wife were located. Defendant's wife told officers that earlier they had been arguing and that while she was on a bed next to their infant child, Defendant put his hand over her nose and mouth preventing her from breathing. Defendant also pushed her onto the bed, tore her shirt, and threatened to "knock her out." The wife reported that Defendant, who

was on bond from case 18CR1386 at the time, had purchased parts to build a firearm, which he had completed. Officers searched the residence and found a Glock-style firearm loaded with 17 rounds of 9mm ammunition. Defendant pleaded guilty and was sentenced to a prison term of 60 months followed by 12 months of post-release supervision ordered to run concurrent with case 18CR1386.

By June 2023, Defendant was on parole from those convictions. The conditions of his supervision included the following search conditions:

> Be subjected to a search of my person and my effects, vehicle, residence, and any other property under my control by parole officers, any authorized parole staff, and Department of Corrections Enforcement, Apprehension and Investigation officers with or without a search warrant and with or without cause.

> Be subjected to a search of my person and my effects, vehicle, residence and any other property.

> (See Attach A, "Certificate of Release")

On October 12, 2023, Defendant signed the document, acknowledging that he read, and understood, the conditions of release.

On June 7, 2023, Defendant's sister reported that he had threatened to "kill any cop that comes to his door." Defendant's parole officer scheduled an appointment to meet with Defendant, but he failed to appear for the meeting. A Johnson County District Court judge then issued a parole violation warrant for Defendant.

On June 22, 2023, Special Agent Jason Kramer, who is a Kansas

Department of Corrections Enforcement, Apprehension, and Investigation officer, along with other members of the Kansas Fugitive Apprehension Task Force, including deputies with the United States Marshals Service, went to the residence where Defendant lived with his parents. Agents contacted Defendant's father, who said Defendant would surrender and Defendant was arrested without incident.

After Defendant was arrested and removed from the residence, Agent Kramer told Defendant's father that, consistent with Kansas law and the terms and conditions of Defendant's parole, Agent Kramer would search Defendant's room. Special Agent Kramer asked both Defendant's father and Defendant's mother if they would allow him inside to search Defendant's belongings, and Defendant's parents agreed.  Defendant's father showed Agent Kramer to Defendant's room and unlocked the door so that Agent Kramer could enter to search.

Agent Kramer searched Defendant's room and recovered four boxes of ammunition, six loaded firearm magazines, three firearm suppressors, a homemade firearm, and other firearm related paraphernalia. The items were later submitted to agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATF).

After the search of the bedroom, Defendant's mother was asked if Defendant had access to the entire upstairs portion of the residence. She replied yes. Agent Kramer located a gun safe in a restroom adjacent to Defendant's bedroom, but neither parent had a key to the same so Agent Kramer did not search it.

Defendant's father then provided Agent Kramer with keys to Defendant's truck so that Kramer could search it. Agent Kramer found no items of contraband in the truck and returned the keys to Defendant's father before leaving the residence.

The Grand Jury charged Defendant with one count of being a felon in possession of a firearm for possessing the firearm silencers and ammunition and one count of possession of an unregistered firearm for the firearm silencers that had not been registered to Defendant in the National Firearms Registration and Transfer Record.

Defendant, through counsel, filed a motion to suppress the evidence seized from the residence. (Doc. 22, filed 2/20/24.) Defendant filed *pro se* motions to dismiss (doc. 31), for a bill of particulars (doc. 32), and for "relief from shackling" (doc. 33).

## I.  MOTION TO SUPPRESS

### A. Authorities

The Fourth Amendment prohibits unreasonable searches and seizures by government agents. Therefore, warrantless searches of a person's residence are generally prohibited. *Kentucky v. King*, 563 U.S. 452, 459 (2011). There are exceptions to the Constitution's warrant requirement, however, "because the ultimate touchstone of the Fourth Amendment is reasonableness." *Id*. at 460,

(quotation omitted).

For instance, "Supervision [of parolees] … is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Griffin v. Wisconsin*, 483 U.S. 868, 876 (1987). Therefore, the Supreme Court recognized the special-needs exception to the warrant requirement for searches of parolees and their homes. *Id*. at 873. (*See also United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009)). Under the special needs exception, "a parole search may be upheld if it is conducted pursuant to a state parole/probation system that itself complies with the Fourth Amendment." *United States v. Tucker*, 305 F.3d 1193, 1200 (10th Cir. 2002). "[A] state has an overwhelming interest in supervising parolees because parolees are more likely to commit future criminal offenses." *Samson v. California*, 547 U.S. 843, 853 (2006) (quotation omitted). This interest authorizes states to authorize searches of parolees even without requiring suspicion of wrongdoing. *Id*. at 857.

Moreover, the Supreme court expanded *Griffin* in *United States v. Knights*, 534 U.S. 112 (2001) when it held that searches performed in compliance with a valid parole agreement may be constitutional even if the search was not conducted by a parole officer monitoring a parolee under the "totality-of-the-circumstances" exception.  Under the totality-of-the-circumstances exception, if a law enforcement officer has reasonable suspicion that a probationer subject to a search condition is

engaged in criminal activity, the officer may search the probationer's residence without a search warrant. *Id. at* 121 (2001).

But even if an officer runs afoul of the Fourth Amendment's warrant requirement, the Court need not suppress the evidence obtained if officers acted in good faith under the doctrine first articulated in *United States v. Leon*, 468 U.S. 897 (1984).

### B. Argument

#### 1. The special-needs exception applies here and justifies the search of Defendant's residence.

Kansas Statute Annotated Section 22-3717(k)(2) states:

> Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to searches of the person and the person's effects, vehicle, residence and property by a parole officer or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious searches or searches for the sole purpose of harassment.

Defendant Vano was on parole at the time of the search of his residence. The search was conducted by a department of corrections enforcement, apprehension and investigation officer. There was no need for reasonable suspicion and the search is justified by the special-needs exception under *Griffin*, codified by K.S.A. 22-3717(k)(2).

Defendant argues, "To the extent there was a 'special need' to protect the

public or officers from potential harm caused by Isaac, those needs were met by his actual arrest." (Def's mot. at 12) This argument is contrary to Tenth Circuit precedent, and the fact the search occurred after Defendant was taken into custody is immaterial. *See United States v. Truijillo*, 404 F.3d 1238, 1245 (10th Cir. 2005) (Search of Trujillo's residence after he was arrested in the driveway was justified because his arrest did not terminate validity of search requirement in Trujillo's parole agreement.)

Defendant's reliance upon *United States v. Pacheco*, 884 F.3d 1031 (10th Cir. 2018) is likewise misplaced. In *Pacheco*, a Kansas City Kansas Police Department officer learned that Pacheco was on Kansas parole and had an active arrest warrant. The officer went to Pacheco's residence to arrest him, but Pacheco would not come outside. The officer called for backup and other officers, including a Kansas Department of Corrections agent, arrived to assist. Eventually officers entered the residence and found Pacheco hiding in an attic. Pacheco was arrested. He was holding a cell phone at the time of the arrest. The Kansas parole officer left the scene and KCKPD officers sought and obtained a search warrant for the residence. Although the warrant did not authorize searches of electronic devices, officers searched the phone and Pacheco sought to suppress the cell phone evidence.

The fact that distinguishes *Pacheco* from this case is clear – the lone KDOC

officer in *Pacheco* left the residence *prior* to the search and KCKPD officers

obtained a search warrant and executed the warrant without the KDOC officer's

involvement.  Here, the KDOC officer not only stayed, but physically conducted

the search.  As the Tenth Circuit said in *Pacheco*:

> Perhaps a KDOC officer … could have, pursuant to the special-needs exception, searched Pacheco's residence, seized potential evidence of wrongdoing, and shared that evidence with KCKPD officers. But that is not what happened. Instead, the government confirms that [the KDOC officer] 'left Pacheco's residence once KCKPD obtained a search warrant for the residence and permitted KCKPD narcotics officers to collect the Samsung cell phone during their search of the home.' Given that [parole officer] was no longer on the premises—not to mention that the officers had sought and obtained a separate search warrant—it defies reason to conclude the KCKPD officers who seized the cell phone were 'acting under the direction of the parole officer.'

*Id*. at 1040 (citations omitted).

Although they rejected the search under the special-needs exception, the

Tenth Circuit upheld the search under the totality-of-the circumstances exception,

discussed below. In this case, however, the Court need not consider the totality-of-

the circumstances-test because the search fits squarely in the special-needs

exception. Defendant was on parole and his residence was subject to suspicionless

searches by KDOC officer. A KDOC enforcement, apprehension and investigation

officer searched Defendant's residence. The search was lawful.

### 2. The Totality of the Circumstances Exception further justifies the search.

There are competing interest in balancing a parolee's privacy interests with

the government's interest in apprehending criminal violators and protecting victims. Based upon these competing interests, the Court established the totality-of-the circumstances test in *Knights*. The search of Defendant's room would be further justified under the totality-of-the circumstances exception.

The totality-of-the-circumstances exception is based upon general Fourth Amendment reasonableness balancing and authorizes warrantless searches of the residences of parolees without either probable cause or reasonable suspicion.

Reasonable suspicion is less than probable cause. It exists where an officer has reasonable suspicion to believe that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Reviewing courts must look at the totality of the circumstances when considering whether an officer had reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Officers are allowed to draw upon their own experience and training to make inferences and deductions from the information known to them. *Id*. Although it is more than a mere "hunch," the likelihood of criminal activity need not rise to probable cause standards, and "falls considerably short" of satisfying a preponderance of the evidence standard. *Id*.

Agent Kramer knew that Defendant had two prior felony convictions – one for shooting a person in the head with a firearm and a felony domestic abuse conviction where responding officers found a firearm. The domestic abuse incident occurred while Defendant was on bond on the shooting case and he was prohibited

from possessing a firearm. Agent Kramer further knew that Defendant failed to appear for a meeting with his parole officer after a report had been made that Defendant had threatened to shoot law enforcement officers. Given those facts Agent Kramer had reasonable suspicion to believe that Defendant would be in possession of a firearm.

### 3. Even if the searches were not justified, the Good Faith Exception prevents suppression of the evidence.

Should the Court find the search was not justified under either the special needs or totality-of-the-circumstances exceptions, the good faith exception to the exclusionary rule applies and the evidence is admissible. Whether to suppress evidence under the exclusionary rule is a separate question from whether the government has violated an individual's Fourth Amendment rights. *Hudson v. Michigan*, 547 U.S. 586, 591-92 (2006). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon*, 458 U.S. 897, 906 (1984) (quotations omitted).

Although *Leon* involved a judicially issued search warrant, the Supreme Court subsequently expanded *Leon* in *Herring v. United States*, 555 U.S. 135 (2009), and *Davis v. United States*, 564 U.S. 229 (2011), both of which involved instances whether the Court declined to apply the exclusionary rule in cases where officers did not conduct their searches under the authority of warrants. As the

11

Court said in *Davis*, "[t]he basic insight of the *Leon* line of cases is that the

deterrence benefits of exclusion vary with the culpability of the law enforcement

conduct at issue." 564 U.S. at 239 (quotation omitted). "To trigger the exclusionary

rule, police conduct must be sufficiently deliberate that exclusion can meaningfully

deter it, and sufficiently culpable that such deterrence is worth the price paid by the

justice system." *Herring,* 555 U.S. at 144.

The rule "serves to deter deliberate, reckless, or grossly negligent conduct,

or in some circumstances recurring or systemic negligence." *Id*. "But when the

police act with an objectively reasonable good-faith belief that their conduct is

lawful, or when their conduct involves only simple, isolated negligence, the

deterrence rationale loses much of its force and exclusion cannot pay its way."

*Davis*, 564 U.S. at 238 (internal quotation and citations omitted).

Applying *Leon*, *Herring*, and *Davis*, even if the Court should find the search

was unreasonable, it should not suppress the evidence because Agent Kramer acted

in good faith by relying upon K.S.A. 22-3171(k)(2).

## II.  DEFENDANT'S PRO SE MOTOIN TO DISMISS (doc. 31)

"A party may raise by pretrial motion any defense, objection, or request that the

court can determine without a trial on the merits." F.R.Crim.P. 12(b)(1). An objection to

a defect in the indictment "must be raised by pretrial motion if the basis for the motion is

then reasonably available and the motion can be determined without a trial on the

merits." F.R.Crim.P. 12(b)(3)(B). "On a motion to dismiss [a charging instrument], the Court is required to consider that the facts alleged are admitted to be true for purposes of determining whether a violation is charged." *United States v. J & J Truck Leasing, Inc.*, 258 F. Supp. 105, 107 (D. Kan. 1966) (citing *Stephens v. United States*,85 F. Supp. 620, 625 (E.D. Ky. 1949)). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)).

The appropriate inquiry on a motion to dismiss an indictment is not whether the government has presented sufficient evidence to support the charge, but whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) at 1067. Therefore, courts are to "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency." *Id.* at 1067.

In certain "limited circumstances," an indictment may be dismissed before trial even if facially valid where "undisputed evidence shows that, as a matter of law, the [d]efendant could not have committed the offense for which he was indicted." *Id.* at 1068. This procedure may be utilized only where (1) the underlying facts are undisputed and (2) the government does not object to the court considering such factual evidence. *Id*. (citing *Hall*, 20 F.3d at 1088). Such dismissals are to be the "rare exception," rather than the rule. *Id*. The Tenth Circuit has explained that this

exception permits a court to look beyond the facial validity of the indictment to consider its factual basis, to determine "whether the elements of the criminal charge can be shown sufficiently for a submissible case." *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991). However, such dismissals "are not to be made on account of a lack of evidence to support the government's case." *Todd*, 446 F.3d at 1608.

Defendant asks the Court to dismiss the indictment under three theories. First, he alleges the federal government does not have subject matter jurisdiction. Subject matter jurisdiction is the Court's power to hear the case. In a criminal context, 18 U.S.C. § 3231 grants "original jurisdiction … of all offenses against the laws of the United States" to the district court. The indictment charges Defendant with a violation of 18 U.S.C. § 922(g) and 26 U.S.C. §5861(d), both of which are violations of the United States. This court has subject matter jurisdiction over the charges alleged in the indictment.

Congresses' power to regulate firearm possession arises from the Commerce Clause of the Constitution. *Scarborough v. United States*, 431 U.S. 563, (1977). *See also United States v. Patton*, 451 F.3d 615, 634 (10th Cir. 2006) ("The constitutional understanding implicit in *Scarborough*—that Congress may regulate any firearm that has ever traversed state lines—has been repeatedly adopted for felon-in-possession statutes by this Court.")

As part of his lack of subject matter jurisdiction argument, Defendant

contends that he acquired the ammunition in Kansas prior to his felony conviction and acknowledges "… some of the ammunition may have been manufactured in other states." He argues this as support of dismissal. Defendant's arguments fail because, (1) he is charged with possession of the ammunition on a date subsequent to his felony convictions and (2) the government need only show that the ammunition traveled in interstate commerce at some time under *Scarborough*. But even if that were not so, Defendant's argument relies upon factual matters – the location of manufacturing of the ammunition and the dates that he acquired the ammunition – that are not appropriately considered by the Court in a pretrial motion to dismiss.

Defendant next argues that 18 U.S.C. 922(g)(1) is unconstitutional, relying upon the Supreme Court's decision in *District of Columbia v Heller*, 554 U.S. 570 (2008). However, the Supreme Court explicitly stated in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. This argument is further precluded by the Tenth Circuit's binding precedent in *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009). The Supreme Court's decision in *McDonald v. City of Chicago*, 561 U.S. 742 (2010) reaffirmed this position. The plurality opinion stated that the Court had "made it clear in Heller that [its] holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on

the possession of firearms by felons and the mentally ill.'" *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626-627).

Defendant's reliance *upon New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) is likewise misplaced. The Court in *Bruen* held the Second Amendment protects the rights of "ordinary, law-abiding citizens" to carry a firearm for self-defense outside the home. 597 U.S. at 8-10. But the Court did not call into question laws prohibiting felons from possessing firearms. In fact, Bruen repeatedly used the term "law abiding citizens" to describe the class of persons protected by the Second Amendment. *See id.* at 9 ("ordinary, law-abiding citizens"); *id.* at 15 ("law-abiding, adult citizens"); *id.* at 26 ("'law-abiding, responsible citizens'") (quoting *Heller*, 554 U.S. at 635); *id.* at 29 ("a law-abiding citizen's right to armed self-defense" and "law-abiding citizens"); *id.* at 31-32 ("ordinary, law-abiding, adult citizens"); *id.* at 2135 n.8 ("law-abiding citizens"); *id.* at 38 ("law-abiding citizens"); *id.* at 38 n.9 ("law-abiding, responsible citizens" (internal quotation marks omitted)); *id.* at 60 ("law-abiding citizens"); *id.* at 70 ("law-abiding, responsible citizens" and "law-abiding citizens").

Most recently in *United States v. Ramihi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024), the Supreme Court reiterated Congress' power to prohibit the possession of firearms by certain classes of individuals. "Indeed, *Heller* stated that many such prohibitions, like those on the possession of firearms by 'felons and the

mentally ill,' are 'presumptively unlawful." *Rahimi*, 2024 WL 3074728 at * 3 (quoting *Heller*, 554 U.S., at 626, 627, n. 26).

Finally, Defendant argues that Count Two, charging possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) is unconstitutional "by proscribing the failure to perform an action of which he is legally incapable of performing." He argues that, because he is a convicted felon, he was unable to register the silencers, per the N.F.A.

In support of his argument Defendant relies upon *United States v. Dalton*, 860 F.2d 121 (10ᵗʰ Cir. 1991). In that case the Tenth Circuit held it was unconstitutional to convict Dalton under §5861(d) for failing to register a machinegun because the government refused to register all machineguns following the ban on machine guns imposed by 18 U.S.C. § 922(o). Unlike the machineguns in *Dalton*, firearm suppressors are able to be registered under the N.F.A.

This claim has been rejected by the Tenth Circuit. *United States v. McCollom*, 12 F.3d 968 (10ᵗʰ Cir. 1993). In *McCollom*, the defendant was charged with possessing two sawed-off shotguns that he could not lawfully possess and therefore was unable to register – one because it lacked a serial number and the other because he had not purchased it from a registered dealer. *Id*. at 970. Distinguishing *Dalton*, the Tenth Circuit agreed with the District Court's decision in *United States v. Tepper*, 793 F.Supp. 270 (D. Colo. 1992) involving similar

facts:

> Even if it is unlikely that the firearm would have been accepted for registration, the defendant has cited no statute which makes the possession of short-barreled shotguns illegal. Nor has he cited any regulation which would have forbidden the BATF from registering the shotgun in 1968 or when it was made. Different from *Dalton*, the registration of this weapon was not a legal impossibility.

*McCollum*, 12 F.3d at 971, *quoting Tepper*, 793 F.Supp. 2d at 272.

The fact that BATF would be likely not allowed defendant as a convicted felon to register the silencers does not render the statute unconstitutional. In *United States v. Rivera*, 58 F.3d 600 (11th Cir. 1995), the Eleventh Circuit dealt with the identical argument from a defendant who relied upon the Tenth Circuit's *Dalton* case.  It held:

> *Dalton* does not control this case. First, the Tenth Circuit recently limited *Dalton* such that, even in the Tenth Circuit, it does not apply to cases such as this one. In *United States v. McCollom*, the defendant was convicted under § 5861(d) of possessing an unregistered sawed-off shotgun. The defendant pointed out that the shotgun was illegal because it lacked a serial number and that this illegality rendered registration impossible; relying on *Dalton*, he argued that this impossibility rendered his conviction unconstitutional. The Tenth Circuit rejected this argument, noting that the defendant's shotgun was distinguishable from the machine gun in *Dalton* in that there is no statutory ban against registration of shotguns, as there is against registration of machine guns; thus, the registration of a shotgun was not a legal impossibility. Likewise, there is no statutory ban against registration of silencers, such as that for which Rivera was convicted of possessing. Registration of such a silencer to Rivera is impossible only because he is a convicted felon. Thus, under the Tenth Circuit's recent decision in *McCollom*, the reasoning of *Dalton* is inapplicable to Rivera's case.

*Rivera*, 58 F.3d at 602.

Further, in *United States v. Berres*, 777 F.3d 1083 (10th Cir. 2015), the Tenth Circuit, relying upon *McCollom*, rejected the same argument that Defendant makes in the context of unregistered flash bang devices. "Even if the defendant himself could not have registered the firearms as a transferee, the firearm was not wholly unregisterable." *Berres*, 777 F.3d at 1088.

## III. Defendant's Pro Se Motion for Bill of Particulars (doc. 32)

Defendant seeks a court order directing the government to file a bill of particulars specifically, "proof of Federal Jursidiction of the place of the alleged criminal activity," (Def's motion, doc. 32 at 1); "that the prosecutor be compelled to elect whether it intends to rely upon the alleged silencers; or upon the ammunition" to support the charge in count one (*id*. at 2); and that "the prosecutor be compelled to produce evidence establishing an 'interstate nexus' for the second count of the indictment." (*Id*.)

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996). A bill of particulars "is not a discovery device but may serve to amplify the indictment by providing additional information." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988)

(quotation omitted). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Id*. (*quoting United States v. Cole*, 755 F.2d 748, 760 (10th Cir. 1985)).

If the indictment sets forth the elements of the offense charged and sufficient apprises the defendant of the charges to enable him to prepare for trial, then a bill of particulars is unnecessary. *Ivy*, 83 F.3d at 1281. "A bill of particulars may not be used to compel the Government to disclose evidentiary details or to explain the legal theories upon which it intends to rely at trial." *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983) (quotation omitted). "Since the defendant is 'not entitled to know all the evidence the government intends to produce, but only the theory of the government's case, the district court does not abuse its discretion in denying a defendant's motion for a bill of particulars where defendant has been served with a sufficient indictment." *Dunn*, 841 F.2d at 1030, (quotation omitted).

An indictment is sufficient if it "sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense." *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1985). Sufficiency is determined by practical rather than technical considerations. *United States v. Crim*, 529 F. 28 287 (10th Cir. 1976).

Defendant's first argument in support of a bill of particulars is to require the government to "establish proof of Federal Jurisdiction of the place of the alleged criminal activity." The indictment alleges violations of federal law and asserts that the offenses occurred within the District of Kansas. No further proof of Federal jurisdiction is required. "It is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished. Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Doe*, 572 F.3d 1162, 1173-74 (quotation omitted). As argued above in response to Defendant's motion to dismiss, the Court has jurisdiction over the alleged offense. A bill of particulars is not needed to establish such fact.

As a second basis for a bill of particulars, Defendant requests the Court to compel the government to "to elect whether it intends to rely upon the alleged silencers; or upon the ammunition." Such request runs contrary to the law. An indictment that alleges a defendant possessed both a firearm and ammunition gives a defendant notice of the factual basis for the offense. *United States v. Hien Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002) (Indictment's description of "firearm with

ammunition" did not limit Court's ability to instruct the jury on possession of either the firearm or ammunition where jury was given special verdict form that required the jury to rule separately and unanimously on each.)

Further, the government is not required to elect whether it is relying upon Defendant's possession of the firearms or silencers. So long as it is unanimous, the jury may convict Defendant of possessing either. "It is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive. *United States v. DeChristopher*, 695 F.3d 1082, 1095 (10th Cir. 2012) *quoting United States v. Gunter*, 546 F.2d 861, 868-69 (10th Cir. 1976). *See also United States v. Thompson*, 560 F.3d 745, 748 (8th Cir. 2009) (affirming district court's jury instruction which quoted from §922(g)(1) by stating "firearm or ammunition" where indictment alleged defendant possessed a "firearm and ammunition."

Finally, Defendant's request for a bill of particulars "to produce evidence establishing an 'interstate nexus' for the second count of the indictment" is insufficient to support a bill of particulars. Count two alleges Defendant received and possessed three firearm silencers not registered to him in the National Firearms Registration and Transfer record in violation of 26 U.S.C. § 5861(d).

Unlike 18 U.S.C. 922(g), 26 U.S.C. §5861(d) does not require proof that the item in question traveled in interstate commerce. *See Pattern Crim. Jury Instr. 10th*

*Cir.* 2.91 (2023). Section 5861(d) was promulgated pursuant to Congress' power to tax. *United States v. Roots*, unpublished, 1997 WL 465199 (10th Cir. Aug. 14, 1997). *See also United States v. Tous*, 461 F.2d 656, 657, (9th Cir. 1972).

The indictment plainly sets forth the offense using the words of the statutes. The statutes themselves adequately states the elements of the offense. Defendant's motion for bill of particulars should be denied.

## III.  Defendant's Pro Se Motion for Relief from Shackling (doc 33)

Defendant asks the Court to require the United States Marshals service to unshackle him "specifically during transport and court appearances." (Doc 33 at 1). In support Defendant cites a Western District of Virginia opinion, *United States v. Williams*, which he attached to his motion. In *Williams*, the district court was reviewing an order from a magistrate judge of the district denying Williams' request to appear at the initial appearance and detention hearing unshackled. In addition to not being binding on this Court, the *Williams* opinion does not support Defendant's request to be transported unshackled, or to appear at appearances outside the presence of a jury unshackled. The Judge in *Williams* recognized that Supreme Court has stated that a defendant has a constitutional right to be unshackled in front of a jury unless required for a "obstreperous defendant"[1] but that the existing precedent has not established a right of a defendant to be

---

[1] *See Illinois v. Allen*, 397 U.S. 337, 343-44 (1970).

unshackled when appearing in front of a judge such as at sentencing.[2]

The Tenth Circuit has recognized that, even at trial, judges have the discretion to assess "the extent to which security measures should be adopted to prevent the disruption of the trial, harm to those in the courtroom, and escape of the accused." *United States v. Hack*, 782 F.2d 862, 867 (10th Cir. 1986) (quotation omitted).

The government has no objection to Defendant being unshackled at trial. However, Defendant's motion goes much further, and seeks to be unshackled "during transport and court appearances." There is no justification for Defendant being unshackled during transport. Indeed, since Defendant is in custody shackling during transport is appropriate and warranted. Defendant's two prior violent felony convictions support shackling, outside the presence of the jury, consistent with the policies and/or practices of the United States Marshals Service.

**CONCLUSION**

Defendant's motions should be denied for the reasons stated above.

RESPECTFULLY SUBMITTED,

*s/ D. Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360

---

[2] The opinion recognized the Ninth Circuit's opinion in *United States v. Sanchez-Gomez*, 859 F.3d 649, 653 (9th Cir. 2017) (considering a district-wide policy requiring the shackling of all criminal defendants during pretrial hearings), but recognized that the Supreme Court vacated that case on other grounds. 584 U.S. 381.

Kansas City, KS  66101
Ph. 913-551-6730
Chris.Oakley@usdoj.gov
Ks Bar No. 19248

## CERTIFICATE OF SERVICE

The undersigned certifies that this Response was filed on July 11, 2024, via

the Court's electronic filing system, which will notify all counsel of record.


*s/ D. Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney