## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

                **Plaintiff**,

**v.**

**ISAAC N. VANO (01),**

                **Defendant**.

             **Case No. 23-20061-01-DDC**

## <u>MEMORANDUM AND ORDER</u>

Defendant Isaac Vano has filed a Motion to Suppress (Doc. 22), through counsel, and pro se motions he identifies as a Motion to Dismiss (Doc. 31), Motion for a Bill of Particulars (Doc. 32), and Motion for Relief from Shackling (Doc. 33).  This Order evaluates and rules on each motion.

In his suppression motion, Mr. Vano asks the court to suppress evidence found during a search of his home because, he argues, it was the fruit of an unconstitutional search.  At the time of the search, Mr. Vano was on post-release supervision, a situation that often implicates an exception to the Fourth Amendment's warrant requirement.  But defendant argues that neither of the probationer and parolee exceptions apply here.  *First*, defendant asserts that the special needs exception doesn't apply because there was no special need to protect the public or officers from potential harm caused by Mr. Vano.  Instead, he contends, officers conducted the search purely for criminal investigation purposes.  What's more, defendant argues, the officers who conducted the search were not parole officers, which makes the exception inapplicable.  *Second*, defendant asserts that the totality of the circumstances exception doesn't apply because the agents

conducted the search without reasonable suspicion that Mr. Vano had violated his supervision conditions.[1]  Because none of the exceptions apply, Mr. Vano argues, the search was unconstitutional and the exclusionary rule requires the court to suppress the fruits of that search.

By contrast, the government argues that both exceptions apply.  The government contends that suppression isn't warranted because the special needs exception justified a search without cause.  And even if it didn't, the government contends the officers had reasonable suspicion to justify the search under the totality of the circumstances exception.  The government alternatively asserts that, even if neither exception applies, the good faith exception to the exclusionary rule precludes suppression.

This Order sides with the government.  The court thus denies defendant's Motion to Suppress (Doc. 22).  Under the totality of the circumstances, the officers had reasonable suspicion to conduct a warrantless search of Mr. Vano's home.  And, in any event, the good faith exception would apply.

This Order explains these decisions, *first*, by reciting the background facts.  *Second*, the Order describes the two probationer/parolee exceptions to the warrant and probable cause requirements and decides whether those exceptions apply to individuals on post-release supervision.  *Third*, the Order evaluates whether the officers had reasonable suspicion sufficient, under the totality of circumstances, to make the search reasonable.  *Fourth*, the Order explains why the good faith exception would apply anyway.  *Last*, the Order analyzes whether it needs to decide if the special needs exception justifies the search.

---

[1]     Defendant also asserts that Mr. Vano's parents, who consented to the search, didn't have authority to do so.  The government doesn't argue consent.  And addressing consent is unnecessary to resolve the motion.

The court also evaluates Mr. Vano's three pro se motions:  Motion to Dismiss the Indictment (Doc. 31), Motion for a Bill of Particulars (Doc. 32), and Motion for Relief from Shackling (Doc. 33).  For the reasons outlined below, the court denies his Motion to Dismiss and Motion for Bill of Particulars.  But it sides with Mr. Vano in part on his last motion.  The court thus grants in part and denies in part the Motion for Relief from Shackling.

## I.    Background

Defendant Isaac Vano was indicted in September 2023 on two charges.  In Count One, the government charged Mr. Vano as a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) & 924(a)(8).  Doc. 1 at 1–2.  And in Count Two, the government charged him with receipt or possession of an unregistered firearm under 26 U.S.C. § 5861(d).  *Id.* at 2.  The indictment also outlined his previous Johnson County, Kansas state court convictions—one for aggravated battery and aggravated assault and another for aggravated domestic battery—to establish his felon status.  *Id.* at 1–2.

The court conducted an evidentiary hearing on the motions on August 6, 2024.  Unless otherwise noted, the court derives the following factual findings from evidence presented during that hearing.

### *Mr. Vano's Supervised Release Violation and Arrest*

After completing his custodial sentences for the convictions listed above, Mr. Vano returned in April 2023 to live with his parents in Overland Park, Kansas.  Doc. 22 at 2.  During that time, Mr. Vano was serving a period of supervised release—not parole—through the Kansas Department of Corrections (KDOC).  *Id.*  In May 2023, Mr. Vano's half-sister, Janelle Vano, reported to the Shawnee Police Department that Mr. Vano threatened law enforcement.  Doc. 22 at 2; Doc. 40-1 at 17.  The Shawnee Police Department issued an officer safety bulletin on May

19, 2023, reflecting Janelle Vano's report that Mr. Vano had stated, "if any officer ever tries to arrest me again, I will kill them." Doc. 40-1 at 17. The bulletin also included the reports that Mr. Vano was "obsessed with firearms" and was contacting family members to recover his guns after their removal following his aggravated battery conviction. *Id.*

KDOC issued a parole violation report on June 23, 2023, which listed the violation's date as June 7, 2023. Doc. 22-1 at 1. At some point before the search, Mr. Vano's KDOC supervision officer scheduled an appointment to meet with Mr. Vano. *See* Doc. 22 at 2. But Mr. Vano missed that appointment. *Id.* An arrest warrant was issued on June 7, 2023,[2] and a period of surveillance followed. Doc. 22-2 at 1. On June 22, 2023, the officers executed the arrest warrant and searched Mr. Vano's home. Doc. 22 at 2–3.

On that day, SA Jason Kramer, of the KDOC Enforcement Apprehensions and Investigations Team, went to arrest Mr. Vano at his parents' home. *Id.*; Doc. 36 at 4. SA Kramer, cross-deputized as a Task Force Officer with the Kansas Fugitive Apprehension Task Force (KFATF), Doc. 37 at 5, arrived at the residence with other KFATF officers, Doc. 22 at 2. Before Mr. Vano exited the home, SA Kramer heard yelling from inside the house. Mr. Vano, after speaking with his father, came out of the house and surrendered peacefully to the officers. *Id.* at 2–3. The officers arrested Mr. Vano and escorted him to Johnson County Central booking. *Id.* at 3.

### Search of Mr. Vano's Bedroom and Boxes

Some of the officers, including SA Kramer, remained at the residence and spoke to Mr. Vano's parents. *Id.* SA Kramer told Mr. Vano's parents that Mr. Vano's "property and possessions were subject to search pursuant to his conditions of parole and K.S.A. 22-

---

[2]     For reasons unknown to the court, the parties haven't entered the arrest warrant into the evidentiary record.

3717(k)(2)." *Id.* With that explanation, SA Kramer asked permission to search Mr. Vano's belongings in the home. *Id.* Mr. Vano's mother explained that Mr. Vano occupied the upstairs floor of the home, where she and her husband rarely went unless they needed to get something out of storage. *Id.* Mr. Vano's father then unlocked Mr. Vano's bedroom for the officers with a key. *Id.* at 4.

At the time of the search, SA Kramer knew about the Shawnee Police Department's officer safety bulletin. That bulletin had informed officers about reports that Mr. Vano had threatened to kill police officers and that he was attempting to recover firearms. SA Kramer also knew about Mr. Vano's prior convictions for aggravated battery with a firearm and aggravated domestic battery (where a firearm was recovered). Before the search, SA Kramer had spoken with a detective investigating a Louisburg, Kansas shooting. The shooting took place at the home of the family of Mr. Vano's ex-wife.[3] SA Kramer knew Mr. Vano was a suspect in that investigation, though no one ever charged him for it. SA Kramer also understood that Mr. Vano had missed an appointment with his parole officer.

After about an hour-long search of Mr. Vano's bedroom and his cardboard-boxed belongings, the officers discovered "four boxes of ammunition, six loaded 9mm magazines, three suppressors, one homemade firearm, four AR sling mounts and disconnects, and one AR brass catcher." *Id.* at 4. The government's current charges against Mr. Vano rely on the ammunition and the silencers. *Id.* And Mr. Vano's Motion to Suppress (Doc. 22), discussed below, relies on the circumstances of this search.

---

[3] The briefing and evidence presented at the suppression hearing isn't clear about who owned the Louisburg house. But it doesn't matter to the court's analysis. Law enforcement officers associated the home with Mr. Vano's ex-wife and her family. That association—not the home's ownership—is the relevant fact here.

II.     **Motion to Suppress (Doc. 22)**

Mr. Vano argues the court should suppress the evidence secured during the search of his bedroom because the search violated the Fourth Amendment.  Doc. 22 at 1.  The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Ordinarily, home searches require warrants based on probable cause.  *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009) (first citing U.S. Const. amend. IV; and then citing *Payton v. New York*, 445 U.S. 573, 586 (1980)).  This requirement extends to the homes of probationers and parolees. *See id.*  But because the Fourth Amendment's touchstone is reasonableness, a court compares "the degree to which a search or seizure intrudes on a suspect's reasonable expectation of privacy" with "the degree to which the intrusion is necessary to promote legitimate government interests."  *United States v. Pacheco*, 884 F.3d 1031, 1040 (10th Cir. 2018) (citing *United States v. Knights*, 534 U.S. 112, 118–19 (2001)).  An individual's status as a probationer or parolee significantly diminishes his expectation of privacy.  *Id.* (citing *Samson v. California*, 547 U.S. 843, 849–50 (2006)).  And the state's "interest in apprehending violators of the criminal law . . . may justifiably focus on probationers in a way that it does not on the ordinary citizen." *Knights*, 534 U.S. at 121 (quotation cleaned up).  So, courts apply two exceptions to the warrant and probable cause requirements in the context of probation and parole.  They are, *first*, the special needs exception, and *second*, the totality of the circumstances exception.  *Warren*, 566 F.3d at 1215.  Mr. Vano argues that neither one applies here.

As a threshold matter, the court addresses whether the exceptions apply with equal force to individuals serving a term of supervised release, instead of parole or probation.  Mr. Vano urges the court to treat his post-release-supervision status differently.  *See* Doc. 22 at 8, 14 n.2;

Doc. 37 at 3–4.  As he notes, the Supreme Court and Tenth Circuit have not addressed explicitly how the two exceptions apply to supervised release.  Doc. 22 at 14 n.2.  Mr. Vano supports his position by citing authority identifying a "'continuum' of state-imposed punishments" that distinguishes between a parolee's and a probationer's expectation of privacy.  *See id.* at 8 (first citing *Knights*, 534 U.S. at 119; and then citing *Samson*, 547 U.S. at 850).  He also cites a number of cases explaining the practical differences between supervised release and parole.  Doc. 37 at 3–4.  But none of these cases suggest that this distinction matters when deciding whether to apply the exceptions to an individual on post-release supervision.  To be sure, one's supervision status informs an individual's expectation of privacy.  *See Knights*, 534 U.S. at 118–19.  But an individual on supervised release still would have a diminished expectation of privacy—like a parolee, *see Samson*, 547 U.S. at 852, or probationer, *see Knights*, 534 U.S. at 119–20.  And Mr. Vano doesn't appear to disagree.  As he aptly explains, reasonable "expectations of privacy are diminished when one is on supervision and subject to a search condition."  Doc. 22 at 8 (citing *Samson*, 547 U.S. at 849–50); *see also* Doc. 37 at 4 (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873, 880 (1987) and arguing "this Court should require that officers have reasonable suspicion to conduct a post-release-supervision search").

What's more, the State of Kansas, the courts, and the community often conflate probation, parole, and supervised release.  In its online system for tracking physical location histories, KDOC referred to Mr. Vano's conduct as a parole violation.  And the Kansas legislature combines both parolees and post-release supervisees under Kan. Stat. Ann. § 22-3717(k)(2).  This court has applied the totality of the circumstances exception to an individual serving post-release supervision in Kansas.  *United States v. Johnson*, No. 17-10048-01-EFM, 2017 WL 5276144, at *2 n.4 (D. Kan. Nov. 13, 2017) ("Given the similarities between the terms

and the lack of case law on this issue pertaining to those on post-release supervision, the Court will look to that law in deciding this case." (quotation cleaned up)).  What's more, our Circuit treats parole and probation "identically for Fourth Amendment purposes."  *United States v. Tucker*, 305 F.3d 1193, 1199 n.9 (10th Cir. 2002) (citation omitted).  And the Supreme Court and our Circuit have deemed supervision a special need that permits "a degree of impingement upon privacy that would not be constitutional if applied to the public at large."  *Griffin*, 483 U.S. at 875; *see also Pacheco*, 884 F.3d at 1040 (explaining that the Supreme Court has categorized supervised release a "special need").  The court thus concludes that any distinction between parole, probation, and supervised release is not a material one in this context.  And the exceptions to the warrant requirement thus apply with equal force to Mr. Vano as a supervisee just as they would to a probationer or parolee.

On that premise, the court takes up these two exceptions, below, starting with the totality of the circumstances exception.

a.      **Totality of the Circumstances Exception**

The government argues that SA Kramer had reasonable suspicion to justify the search under the totality of the circumstances exception.  Doc. 36 at 9–11.  The totality of the circumstances exception authorizes reasonable, warrantless searches of parolees and probationers by law enforcement officers.  *Warren*, 566 F.3d at 1216.  A "probation search condition" is a "salient circumstance" to evaluate reasonableness.  *Knights*, 534 U.S. at 118.  For a reasonable search in the probation context, the government needs reasonable suspicion.  *Knights*, 534 U.S. at 121 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is

occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

Reasonable suspicion involves "a particularized and objective basis for suspecting criminal activity." *Tucker*, 305 F.3d at 1200 (citation omitted). "To determine whether reasonable suspicion for suspecting a parole violation exists, we consider the quantity and reliability of the information possessed by law enforcement and consider this information in light of the totality of the circumstances." *United States v. Freeman*, 479 F.3d 743, 749 (10th Cir. 2007); *see also Tucker*, 305 F.3d at 1201 (finding reasonable suspicion despite absence of corroboration when a tip came from a citizen-informant, "explained the informant's basis of knowledge," and "was quite detailed"). "Reasonable suspicion may exist . . . on information less reliable than that needed to establish probable cause." *Tucker*, 305 F.3d at 1201. Here, the court finds that the officers had "a particularized and objective basis for suspecting criminal activity" under the totality of the circumstances. *Id.* at 1200.

The government asserts the officers had reasonable suspicion that Mr. Vano possessed firearms, which was sufficient to justify the search. Doc. 36 at 11. The government bases this purportedly reasonable suspicion on several things SA Kramer knew at the time of the search.

- Mr. Vano had two violent felony convictions, one which involved shooting someone and another where a firearm was recovered. *Id.* at 10.

- A safety bulletin published by the Shawnee Police Department explained that a family member reported Mr. Vano had stated his intent to kill law enforcement officers who attempted to arrest him and that he had been "contacting family to get his guns back." Doc. 41 at 4. And both were based on the report of Mr. Vano's half-sister. Doc. 39 at 25 (Mot. Suppress Hr'g Tr. 25:1–12).

- Mr. Vano failed to appear at a meeting with his parole officer.  Doc. 36 at 11.

- A shooting occurred at a residence affiliated with Mr. Vano's ex-wife (the victim in his domestic case).  Doc. 41 at 4–5.

- The ex-wife's family believed Mr. Vano was responsible, and the shooting occurred after Mr. Vano was released.  Doc. 39 at 22–23 (Mot. Suppress Hr'g Tr. 22:19–23:21).

To no one's surprise, Mr. Vano disagrees.  Doc. 22 at 15–16.  He argues that the officer's reliance on his criminal history is insufficient to support reasonable suspicion.  Doc. 37 at 8–9. Mr. Vano is correct—to an extent.  Without more, past criminal history can't establish reasonable suspicion because "[p]resumably all parolees have criminal records[.]" *Freeman*, 479 F.3d at 749.  But criminal history, together with "other particularized and objective facts," can give rise to reasonable suspicion. *Id.*  Part of the government's reasonable suspicion argument includes Mr. Vano's prior felony convictions—one where Mr. Vano shot someone and another where a firearm was seized.  Doc. 41 at 4.  And these convictions—standing alone—aren't enough.  But they aren't alone here.  SA Kramer also knew about the officer safety bulletin, the missed parole appointment, and the very recent Louisburg shooting at the home of his former in-laws.  The court evaluates, below, how these facts contribute to the officer's reasonable suspicion to search Mr. Vano's room.

The most salient fact in the reasonable suspicion analysis is the Shawnee Police Department's officer safety bulletin, which SA Kramer knew about before the search.  Mr. Vano tries to undercut the weight of this bulletin by casting doubt on its credibility.  Mr. Vano's half-sister provided the information and—as SA Kramer admitted—there was no corroborative evidence supporting her statements.  Doc. 40 at 11.  But "the Supreme Court has determined that

the traditional indicia of reliability for tips play a diminished role when it comes to parole and probation searches." *United States v. Trujillo*, 404 F.3d 1238, 1245 (10th Cir. 2005).  An absence of corroboration is not fatal to a finding of reasonable suspicion, *Tucker*, 305 F.3d at 1201, and an informant properly can base her knowledge on hearsay, *id.* at 1201 n.11 (citation omitted).  SA Kramer knew that Janelle Vano had reported statements made by Mr. Vano reflecting his intention to kill law enforcement officers, should they try to arrest him.  Also, he knew about Janelle Vano's report that Mr. Vano was "obsessed with firearms" and was attempting to get his confiscated guns back.  *See* Doc. 40-1 at 17.[4]  And while no other pre-search evidence suggested that Mr. Vano had succeeded, no evidence suggested he hadn't succeeded.  It is a dangerous game for law enforcement officers to assume a previously violent offender hadn't secured firearms when reliably informed that he was trying to do so.  The safety bulletin, published by a fellow law enforcement agency, reported information from a family member that Mr. Vano was trying to regain his access to firearms.  And the same safety bulletin reported his intention to use violence against police.  This bulletin provided sufficiently reliable information about possible criminal activity, and strongly supports reasonable suspicion.  *Cf. Leatherwood v. Welker*, 757 F.3d 1115, 1121 (10th Cir. 2014) (finding reasonable suspicion satisfied in probation context in part because of an email—relayed to officer by a known assistant district attorney—describing allegations provided by anonymous informant who alleged a reliable base of knowledge).

---

[4]     The court doesn't buy Mr. Vano's argument that Janelle Vano stating he was "contacting family to get his guns back" implied Mr. Vano did not have firearms at the time of the search.  *See* Doc. 40 at 11–12. As Mr. Vano argues for other reasons, there was a period of time between the alleged statements and the arrest warrant.  *See* Doc. 22 at 15 ("The parole officer requested a warrant two weeks after the statement was allegedly made.").

And the government contends that other facts contributed to SA Kramer's reasonable suspicion.  According to the government, Mr. Vano failed to appear for a meeting with his parole officer on June 7, 2023.  This failure followed a report that Mr. Vano had threatened to kill law enforcement officers.  Doc. 36 at 11.  The government cites no authority to support that such a failure contributes to reasonable suspicion, and Mr. Vano doesn't respond to the argument.  But the Supreme Court has articulated as a general principle that probationers are "in need of rehabilitation and [are] more likely than the ordinary citizen to violate the law[.]"  *Griffin*, 483 U.S. at 880 (recognizing that in the probation context, tips provided with less certainty of a violation can support reasonable suspicion).  And, "probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal[.]"  *Knights*, 534 U.S. at 120 (explaining the diminished privacy interests of probationers in part because of the state's interest in mitigating this risk).  What's more, at least one other district court has held that missing an appointment with a parole officer can contribute to reasonable suspicion for a search.  *See Blackshear v. Cincinnati Adult Parole Auth.*, No. 11-cv-212, 2012 WL 3288914, at *2, 8 (S.D. Ohio Aug. 8, 2012) (combining a missed parole appointment with other factors and finding reasonable suspicion to support a parolee search).

Here, Mr. Vano's parole officer scheduled the meeting because of Janelle Vano's allegations, Doc. 22 at 2, which suggested Mr. Vano violated or was going to violate terms of his supervision.  By failing to meet with his parole officer in the face of those allegations, Mr. Vano gave the officers more reason to believe he may have violated the terms of his supervision and was concealing this violation.  The court concludes that Mr. Vano's failure to attend the meeting—in conjunction with the other information known to SA Kramer—supports a finding of reasonable suspicion.

The government identifies one final fact that, it argues, contributes to SA Kramer's reasonable suspicion that Mr. Vano possessed firearms.  At the time of the search, SA Kramer also knew that Mr. Vano was a suspected perpetrator of a recent shooting at a home associated with Mr. Vano's ex-wife.  Doc. 41 at 4.  But SA Kramer didn't have any actual evidence tying Mr. Vano to the shooting, and in fact, he never was charged with the shooting or related crimes.  Doc. 40 at 10–11.  And, Mr. Vano argues, the shooting incident wasn't mentioned in SA Kramer's police report, which "undermines any reliance on this information" in formulating reasonable suspicion.  Doc. 40 at 12.  But Mr. Vano cites no authority suggesting that a court reviewing reasonable suspicion only may evaluate factors a searching officer expressly relied on.  Nor did the court's research reveal that our Circuit ever has answered the reasonable-suspicion-without-reliance question, though it expressly has declined to answer it.  When evaluating reasonable suspicion for detention and questioning following a traffic stop, the Tenth Circuit concluded that "ample other factors were present" and "within the officer's awareness," so it left "for another day the question of whether factors not . . . relied upon by [the officer] may be considered by a reviewing court."  *United States v. Hunnicutt*, 135 F.3d 1345, 1349 n.1 (10th Cir. 1998).  This court chooses to follow suit, and so doesn't factor the Louisburg shooting into its reasonable suspicion analysis.

Before concluding the reasonable suspicion analysis, the court addresses Mr. Vano's final argument against reasonable suspicion:  his peaceful arrest.  Mr. Vano argues that his peaceful arrest highlights the absence of reasonable suspicion for the search.  Doc. 22 at 15–16.  He argues that his behavior—which contradicted how Janelle Vano had suggested he would behave—negates any basis for the arrest warrant.  *Id.* at 16.  But Mr. Vano cites no authority to support this argument.  He just distinguishes *Pacheco*, where the defendant "was determined to

evade arrest." *Id.* at 15.  While Mr. Vano's reading of the facts in *Pacheco* is a fair one, the

Circuit's reasonable suspicion analysis was succinct and didn't explain the specific

circumstances for the finding.  *Pacheco*, 884 F.3d at 1041 ("[A]t the time of the search there was

probable cause—let alone reasonable suspicion—to believe Pacheco had reengaged in criminal

wrongdoing while on parole.").  And our circuit has concluded that parole search conditions

remain in effect after the parolee's arrest and that the government has an "ongoing interest in

obtaining information about the scope and severity" of criminal activity.  *Trujillo*, 404 F.3d at

1243–44.  What's more, once law enforcement has reason to believe a supervisee has violated

the terms of his release, "there is, by definition, reasonable suspicion to support a search of his

residence to ensure compliance with the conditions of his parole."  *Id.* at 1245 (quotation cleaned

up) (referencing a parole condition allowing searches to "'ensure compliance' with the

conditions of his parole" (citation omitted)).  And here, the evidence shows SA Kramer heard

yelling from inside the house after the team spoke with Mr. Vano's father, who assured them he

would convince Mr. Vano to surrender peacefully.  The court is not convinced that Mr. Vano's

peaceful arrest effectively mitigated the risk that Mr. Vano violated the terms of his supervision

by making threats or possessing firearms.  And, the government had an "ongoing interest" in

ensuring "compliance with the conditions of [Mr. Vano's] parole."  *Id.* at 1243–45.  While Mr.

Vano's peaceful and nonviolent behavior at the time of his arrest is a weight on the scale against

reasonable suspicion, it is not enough to tip the balance entirely.

      Even without evaluating the Louisburg shooting incident, the totality of the

circumstances weigh in favor of finding "a particularized and objective basis for suspecting

criminal activity."  *Tucker*, 305 F.3d at 1200.  So, SA Kramer had reasonable suspicion to justify

the search of Mr. Vano's bedroom.  The court thus denies Mr. Vano's Motion to Suppress under the totality of the circumstances exception.

**b.      Good Faith Exception**

Though the court finds the totality of the circumstances exception justifies the search, the court briefly addresses the government's argument about the good-faith exception to the exclusionary rule.  *See* Doc. 36 at 11.  Because SA Kramer acted in reliance on Kan. Stat. Ann. § 22-3171(k)(2) to authorize his search of Mr. Vano's home, the government argues, suppression would not serve the exclusionary rule's deterrent purpose.  *Id.* at 11–12.  Courts must rigorously weigh the exclusionary rule's costs against its deterrence benefits.  *Davis v. United States*, 564 U.S. 229, 238 (2011).  The exclusionary rule exists to deter law enforcement conduct that is "deliberate," "reckless," or "grossly negligent."  *Id.*  So, when an officer possesses an "objectively reasonable good-faith belief that [his] conduct is lawful," suppressing the resulting evidence fails to serve the rule's deterrent purposes.  *Id.* (internal quotation marks and citation omitted).  That is, suppressing "evidence obtained by an officer acting in objectively reasonable reliance on a statute would have . . .  little deterrent effect on the officer's actions[.]"  *Illinois v. Krull*, 480 U.S. 340, 349 (1987); *see also United States v. Ackerman*, 804 F. App'x 900, 903–04 (10th Cir. 2020) (citing *Krull* and affirming application of good faith exception where government actor had "relied in good faith upon [a] statutory scheme" and so, "the exclusionary rule's purpose of deterring government misconduct would not be served").  Thus, unless "a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law."  *Krull*, 480 U.S. at 349–50.

Mr. Vano argues that binding precedent in these situations requires the court to reject the good-faith exception here.  Doc. 37 at 10 (collecting cases refusing to apply the good-faith

exception where mistake was made by the searching officer, not a third-party).  And, Mr. Vano asserts, this court recently rejected an "identical argument" to the one the government makes here.  *Id.* (citing *United States v. Nance*, No. 24-cr-40017-TC, 2024 WL 3179684, at \*6 (D. Kan. June 26, 2024)).  But Mr. Vano's argument misconstrues Judge Crouse's holding in *Nance*.  In *Nance*, the government argued the good-faith exception applied when an officer mistakenly frisked an individual absent reasonable suspicion.  *Nance*, 2024 WL 3179684, at \*1–2.  So, the officer didn't rely in good faith on a third-party mistake.  *Id.* at \*6 (attributing the officer's mistake to himself, not a third party, like a magistrate, *legislature*, department employee, or court).  Here, the good faith exception would apply—not because SA Kramer made a mistake—but because he relied on the Kansas legislature's statute authorizing his conduct.  *See* Doc. 36 at 12; Doc. 22-2 at 1–2.  This statute permits a KDOC enforcement, apprehension, and investigation officer such as SA Kramer to search a post-release supervisee's residence or property with or without cause.  Kan. Stat. Ann. § 22-3717(k)(2).  And SA Kramer was tasked with executing such searches as part of his job duties.  *See* Doc. 39 at 6–7 (Mot. Suppress Hr'g Tr. 6:18–7:1).  The court can't expect SA Kramer to question the judgment of the Kansas legislature, because the statute isn't clearly unconstitutional.  *See State v. Toliver*, 417 P.3d 253, 260–61 (Kan. 2018) (discussing an older version of the statute and explaining that "an authorizing state statute . . .  presents one way in which a suspicionless search can withstand Fourth Amendment scrutiny").  SA Kramer's reliance was objectively reasonable, and thus, the good-faith exception would apply.

Thus, even if the totality of the circumstances exception did not apply, the court would reach the same result under the good faith exception—admitting the evidence if it is offered.

16

### c.    Special Needs Exception

The government argues that one more exception applies to justify the search of Mr. Vano's home—the special needs exception.  Doc. 36 at 7.  But the court needn't decide whether it applies here.  The special needs exception applies when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Warren*, 566 F.3d at 1215 (quotation cleaned up).  A probation or supervision system is a special need justifying departure from the traditional requirements.  *See id.*; *Griffin*, 483 U.S. at 873–74. Our Circuit has interpreted the "*Griffin* line of cases" as "resting on the rehabilitative relationship between the parolee and the parole officer[.]"  *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007).  Mr. Vano argues that KDOC enforcement, apprehension, and investigations officers differ from parole officers, and thus SA Kramer had no ability to direct searches under the special needs exception.  Doc. 35 at 5.  But the court doesn't decide whether SA Kramer had the requisite rehabilitative relationship because it reaches the same conclusion by different means—the totality of the circumstances exception.

In sum, the court holds that, under the totality of the circumstances, the search was reasonable based on Mr. Vano's diminished expectation of privacy as a post-release supervisee and the government's reasonable suspicion that he possessed firearms.  And, even if that weren't the case, SA Kramer's good faith reliance on Kan. Stat. Ann. § 22-3717(k)(2) as giving him authority to conduct a suspicionless search would allow the court to admit the evidence.  So, the court denies Mr. Vano's Motion to Suppress (Doc. 22).

## III.    Pro Se Motions

Mr. Vano also has filed several pro se motions.  *See* Doc. 31; Doc. 32; Doc. 33.  Because he filed them pro se, the court construes his motions liberally.  *See United States v. Davis*, 339

F.3d 1223, 1225 (10th Cir. 2003) (explaining the circuit liberally construed defendant's brief because he proceeded pro se).  *First*, he moved to dismiss the case, arguing that the court lacks subject matter jurisdiction and that both charging statutes are unconstitutional.  Doc. 31 at 1, 7, 10.  *Second*, he moved for a bill of particulars under Fed. R. Crim. P. 7(f).  Doc. 32 at 1.  *Third*, he moved for relief from shackling during particular phases of this adjudication.  Doc. 33 at 1. The court now addresses each motion, in turn.

### a.      Motion to Dismiss (Doc. 31)

Mr. Vano moves to dismiss the indictment on three theories:  (i) the court lacks subject matter jurisdiction to hear his case; (ii) the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1), is unconstitutional; (iii) the possession of an unregistered firearm statute, 26 U.S.C. § 5861(d), is unconstitutional.  All three of Mr. Vano's arguments fail.

### i.      *Subject Matter Jurisdiction*

Mr. Vano first argues that the court lacks subject matter jurisdiction.  Doc. 31 at 5–6.  He argues that the court lacks jurisdiction, in effect, because Congress possessed no authority to enact the two statutes under which he is charged.  He asserts that the United States has no authority to prosecute crimes occurring within the State of Kansas absent territorial jurisdiction over the state, nor any authority to create federal criminal laws absent an express grant of authority in the Constitution.  *See* Doc. 31 at 2–7.  Because Congress lacked the requisite authority, he says, the court lacks subject matter jurisdiction to decide this case.  *Id.*  The court disagrees.

*First*, Mr. Vano argues this court lacks subject matter jurisdiction because the alleged crimes occurred within the state of Kansas.  But Mr. Vano is charged with violating federal criminal statutes.  *See* Doc. 1 at 1–2 (charging Mr. Vano under 18 U.S.C. §§ 922(g)(1) &

924(a)(8) and under 26 U.S.C. § 5861(d)).  And while Mr. Vano is correct that the court must have subject matter jurisdiction, violating a federal statute suffices to confer that jurisdiction.  In "every federal criminal prosecution subject-matter jurisdiction comes from 18 U.S.C. § 3231. That's the beginning and the end of the jurisdictional inquiry." *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011) (quotation cleaned up).  Section 3231 provides that the "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." *Id.*; 18 U.S.C. § 3231.  So, the Kansas-based geography of the charged crimes doesn't affect the court's subject matter jurisdiction.

*Second*, Mr. Vano argues this court lacks subject matter jurisdiction because Congress has no constitutional authority to make criminal laws.  But Congress passed both offenses charged in the indictment under valid constitutional authority.  Section 922(g)(1) was codified under Congress's Commerce Clause authority.  *Cf. Scarborough v. United States*, 431 U.S. 563, 575 (1977) (recognizing that in codifying certain felon-in-possession statutes, Congress intended to require possession of a firearm with a minimal nexus to interstate commerce); *United States v. Patton*, 451 F.3d 615, 634 (10th Cir. 2006) ("The constitutional understanding implicit in *Scarborough*—that Congress may regulate any firearm that has ever traversed state lines—has been repeatedly adopted for felon-in-possession statutes by this Court.").  And the government alleged an interstate nexus in the indictment sufficient to satisfy the statutory requirement invoking interstate commerce.  18 U.S.C. § 922(g).  Similarly, § 5861(d) was codified as a permissible exercise of Congress's authority under its taxing power.  *See United States v. Roots*, 124 F.3d 218, 1997 WL 465199, at *2 (10th Cir. 1997) (collecting cases that uphold § 5861(d) as a permissible exercise of Congress's taxing power); *United States v. Dalton*, 960 F.2d 121, 124– 25 (10th Cir. 1992) (acknowledging that "the registration requirements of the National Firearms

Act were passed pursuant to the taxing power"). Mr. Vano is correct generally. Congress needs constitutional authority to legislate. *See* Doc. 31 at 6. But his narrower point fails because Congress possessed authority to enact the statutes Mr. Vano is charged with violating. So, faced with validly enacted federal offenses, this court has subject matter jurisdiction under 18 U.S.C. § 3231. The court denies the portion of Mr. Vano's Motion to Dismiss premised on lack of jurisdiction.

### ii.        *Constitutionality of 18 U.S.C. § 922(g)(1)*

Mr. Vano next argues the court should dismiss his case because 18 U.S.C. § 922(g)(1) is unconstitutional given the Second Amendment's guarantee of the right to keep and bear arms. Doc. 31 at 7–8. He contends that *N.Y. State Rifle & Pistol Assn., Inc. v. Bruen* supports his claim of unconstitutionality. 597 U.S. 1 (2022). The Supreme Court held in *Bruen* that the Second Amendment protects the right of law-abiding citizens to keep and bear arms in public for self-defense. *Id.* at 9–10. Mr. Vano fails to mention the "law-abiding" portion of that holding and cites a single case where a court found § 922(g) unconstitutional in *Bruen*'s wake. *See* Doc. 31 at 8 (citing *United States v. Bullock*, 679 F. Supp. 3d 501 (S.D. Miss. 2023)).

But, as the government's response highlights, *Bruen* didn't "call into question laws prohibiting felons from possessing firearms." Doc. 36 at 16. To the contrary, *Bruen* "repeatedly used the term 'law abiding citizens' to describe the class of persons protected by the Second Amendment." *Id.* (citing *Bruen*, 597 U.S. at 9, 15, 26, 29, 31–32, 35 n.8, 38 n.9, 60, 70). What's more, the Court confirmed just four days before Mr. Vano filed his motion that the Second Amendment right is "not unlimited." *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024) (quotation cleaned up) (interpreting the constitutionality of § 922(g)(8)). There, the Court explained that "[s]ince the founding, our Nation's firearm laws have included provisions

preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1896.  The Court reiterated that prohibitions "like those on the possession of firearms by 'felons . . . ,' are 'presumptively lawful.'" *Id.* at 1902 (quoting *District of Columbia v. Heller*, 554 U.S 570, 626, 627 n.26 (2008)).  And this country's "tradition of firearm regulation" supports disarming those "who present a credible threat to the physical safety of others." *Id.*

Mr. Vano's prior convictions—one which involved use of a firearm and both which involved physical violence—represent credible threats.  *Cf., e.g.*, *United States v. Morales*, No. 24 Cr. 84, 2024 WL 3345982, at *1 n.1, *2 (S.D.N.Y. July 8, 2024) (recognizing that one's prior felony conviction for criminal possession of a weapon "is not the type that courts have suggested conceivably could support" an as-applied challenge to § 922(g)(1) and finding the discussion in *Rahimi* about the "history of firearm regulations prohibiting dangerous persons from possessing arms" reflects § 922(g)(1)'s constitutionality).  Thus, the Supreme Court's recent Second Amendment decisions suggest that 18 USC § 922(g)(1) comports with the Second Amendment.[5]  Mr. Vano's Motion to Dismiss here fails as well.

---

[5]     Before *Rahimi*, our Circuit affirmed the dismissal of a *Bruen*-challenge to § 922(g)(1).  *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023), *vacated and remanded*, No. 23-683, 2024 WL 3259668 (U.S. July 2, 2024).  The Supreme Court vacated the judgment and remanded to our Circuit for reconsideration in light of *Rahimi*.  *Vincent v. Garland*, 2024 WL 3259668, at *1.

The Northern District of Oklahoma addressed a *Bruen*-challenge to § 922(g)(1) after the *Vincent* judgment was vacated.  That court held that § 922(g)(1) was unconstitutional, in light of *Rahimi*, *as applied* to a felon convicted of *nonviolent* crimes.  *United States v. Forbis*, No. 23-CR-00133, 2024 WL 3824642, at *5 (N.D. Okla. Aug. 14, 2024) (defendant previously was convicted on drug and DUI charges).  In reaching this conclusion, that court drew a distinction between offenders who "'threaten physical harm to others from misusing firearms'" and offenders like Mr. Forbis, who the government did not argue presented a danger to the public.  *Id.* (quoting *Rahimi*, 144 S.Ct. at 1896).  Here, Mr. Vano's prior felony convictions were for two violent crimes, one involving a firearm and another where a firearm was recovered.  So, the reasoning of the *Forbis* court doesn't apply on these facts.

21

### iii.        *Constitutionality of 26 U.S.C. § 5861(d)*

Mr. Vano also argues that his Indictment under 26 U.S.C. § 5861(d) for possessing an unregistered firearm violates his right to fundamental fairness.  Doc. 31 at 10.  He contends that his status as a person prohibited from possessing a firearm means that he legally can't register a firearm as the statute requires.  *Id.*  Because registering is a legal impossibility for him, he reasons that the government shouldn't indict him under that statute.  *Id.*  And he cites *Dalton* in support.  *Id.*  Mr. Vano's argument misses the mark.

In *Dalton*, the Tenth Circuit agreed that "due process bars [a defendant's] conviction under a statute which punishes his failure to register when that registration is precluded by law." 960 F.2d at 122.  But in *Dalton*, unlike here, the legal preclusion resulted from the illegal status of the weapon—a machine gun.  *Id.*  A separate statute prohibited possession of a machine gun and thus necessarily precluded its registration.  *Id.*  Taking both statutes together, no one could legally register a machine gun.  So, the court found, the defendant's conviction for failing to register a weapon that he couldn't register legally was unconstitutional.  *Id.* at 126.

Here, though, the legal status of the silencers allegedly found in Mr. Vano's possession doesn't prohibit registration.  Instead, Mr. Vano argues, his legal status as a prohibited possessor prohibits registration.  And Mr. Vano cites no statute making possession of silencers illegal, a defect that dooms his argument.  *See United States v. McCollom*, 12 F.3d 968, 971 (10th Cir. 1993) ("Even if it is unlikely that the firearm would have been accepted for registration, the defendant has cited no statute which makes the possession of short-barreled shotguns illegal." (quotation cleaned up); *United States v. Cox*, 906 F.3d 1170, 1182–83 (10th Cir. 2018) (finding *Dalton* doesn't control where defendants cite "no federal statutory ban on the possession or transfer of the firearms at issue[,]" including silencers).  So, this case is "different from *Dalton*

[because] the registration of [the silencers] was not a legal impossibility." *McCollom*, 12 F.3d at 971 (quotation cleaned up).  Thus, our Circuit has distinguished cases like *Dalton*, where registration is impossible because of the weapon's status, and cases like Mr. Vano's, where registration is improbable because of the possessor's status.  Indicting Mr. Vano for failing to register doesn't violate his due process rights because "[e]ven if the defendant himself could not have registered the firearms . . . , the firearm was not wholly unregisterable." *United States v. Berres*, 777 F.3d 1083, 1088 (10th Cir. 2015) (distinguishing *Dalton* where the § 5861(d) defendant could not register the firearm as the transferee of that weapon).  So, indicting Mr. Vano under the registration statute isn't unconstitutional, as Mr. Vano asserts.

Mr. Vano also contends that the registration requirement lost its constitutional legitimacy because it was promulgated under Congress's taxing power.  Doc. 31 at 10.  And Congress has determined it won't accept his tax revenue under 26 U.S.C. § 5861(d)—because he is a prohibited person.  *Id.*  So, since he can no longer be taxed, the statute has lost its constitutional legitimacy as an aid to tax collection.  *Id.*  But again, Mr. Vano has transposed the status of the weapon under the law with the status of the possessor under the law.

When the Tenth Circuit accepted this removal of constitutional legitimacy argument in *Dalton*, it did so because a statute deemed the machine gun at issue illegal.  *Dalton*, 960 F.2d at 125.  But not so here.  The status of silencers—and Congress's power to tax them—hasn't changed as it had with the machine guns in *Dalton*.  Instead, it's Mr. Vano's that changed.  But Mr. Vano's change in status doesn't undermine the constitutional legitimacy of 26 U.S.C. § 5861(d) as a tax collection apparatus.  The federal government still derives tax revenue from registered weapons of the type Mr. Vano is charged with possessing because others legally can possess and register them.  *See Cox*, 906 F.3d at 1182 (finding a taxing-power challenge to §

5861(d) "is doomed to fail" when a statute does not criminalize possession of the firearm at issue).  And so, this argument fails too.  The court thus denies Mr. Vano's Motion to Dismiss (Doc. 31).

**b.    Motion for Bill of Particulars (Doc. 32)**

Mr. Vano also requests a Bill of Particulars under Fed. R. Crim. P. 7(f).  Doc. 32 at 1. Mr. Vano specifically asks for particulars about (1) proof of federal jurisdiction over the place of the alleged criminal activity; (2) whether the prosecution intends to rely upon the alleged silencers or the ammunition under Count 1; and (3) evidence establishing an "interstate nexus" for Count 2.  *Id.* at 1–2.  The court needn't address Mr. Vano's request for proof of territorial jurisdiction because, as explained above, federal jurisdiction inheres under 18 U.S.C. § 3231 for violations of federal laws.

Rule 7(f) provides in relevant part that the "court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."  Fed. R. Crim. P. 7(f).  A bill of particulars informs "the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy" in a later prosecution.  *United States v. Higgins*, 2 F.3d 1094, 1096 (10th Cir. 1993) (quotation cleaned up).  A bill of particulars isn't necessary when an indictment sets out the elements of the offense and sufficiently informs defendant of those charges to allow him to prepare for trial. *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (citing *United States v. Levine*, 983 F.2d 165, 166–67 (10th Cir. 1992)).  "An indictment need not go further and allege in detail the factual proof that will be relied upon to support the charges."  *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quotation cleaned up).  That is, a defendant "is not entitled to know

24

all the *evidence* the government intends to produce, but only the *theory* of the government's case[.]" *Id.* at 1030 (emphasis in original) (quotation cleaned up).  In sum, a bill of particulars "is not a discovery device[.]" *Id.* at 1029 (citation omitted).

Because Mr. Vano proceeds pro se on these motions, the court permits his late-in-time motion.  *See* Doc. 32 (filing the motion on June 25, 2024, though Mr. Vano was arraigned eight months earlier in October 2023).  But Mr. Vano's motion fails anyway.  Mr. Vano hasn't demonstrated that he is unable to prepare his defense to Count 1.  Although he doesn't know whether the government will rely on the silencers, the ammunition, or both, the Indictment sufficiently sets forth the elements of the offense charged in Count 1.  That is, the Indictment identifies with specificity the convictions that qualify Mr. Vano as a felon under § 922(g)(1).  Doc. 1 at 1–2.  Then, the Indictment spells out the ammunition (approximately 102 rounds of 9mm ammunition, two rounds of 12-gauge ammunition, and approximately 235 rounds of assorted ammunition) and the firearms (three silencers) he allegedly possessed.  *Id.* at 2.  To be sure, the Indictment doesn't explain whether or how the government will prove that Mr. Vano possessed either the ammunition or firearms, or both.  *See generally id.*  But the Indictment doesn't have to do so.  The government can indict a defendant under § 922(g)(1) in the conjunctive (ammunition *and* firearms) and prove the element in the disjunctive (ammunition *or* firearms).  *United States v. Silva*, 889 F.3d 704, 716–17 (10th Cir. 2018).  The Indictment also doesn't explain precisely how the ammunition and firearms were possessed in or affecting interstate commerce, as required under § 922(g)(1).  But it does charge such an interstate nexus in the Indictment.  *Id.*  Precisely how the government will prove these elements goes to the evidence it will offer to support the case, not its theory.  *See Dunn*, 841 F.2d at 1030.  And so, a bill of particulars is unnecessary to enable Mr. Vano's sufficient trial preparation on Count 1.

And, for Count 2, Mr. Vano seeks to compel the prosecution to "produce evidence establishing an 'interstate nexus[.]'" Doc. 32 at 2. The court is unpersuaded by this request for two reasons. *First*, Mr. Vano seeks to use Rule 7(f) as a discovery device. Again, a bill of particulars doesn't entitle Mr. Vano to discover all the evidence the government might put on at trial. *See Dunn*, 841 F.2d at 1029. *Second*, even construing Mr. Vano's motion as a simple request that the government charge all the elements of the offense, the government doesn't have to prove an "interstate nexus" at all under 26 U.S.C. § 5861(d). *See Roots*, 1997 WL 465199, at *2 (explaining that § 5861(d) "was promulgated pursuant to Congress's power to tax . . . not pursuant to the Commerce Clause"). Because an interstate nexus isn't required under the charging statute, the government's failure to include it in Count 2 of the Indictment is irrelevant. Count 2 thus doesn't warrant a bill of particulars. So, the court denies Mr. Vano's Motion for a Bill of Particulars (Doc. 32).

c.      **Motion for Relief from Shackling (Doc. 33)**

In his third pro se motion, Mr. Vano requests relief from shackling "during transport and court appearances" because shackling "openly violates" the presumption of innocence, and "visibly declar[es] a presumption of guilt." Doc. 33 at 1–2. He also protests the "physical discomfort inflicted by the shackles themselves." *Id.* at 2.

The Supreme Court has explained that

> [c]ourts and commentators share close to a consensus that, during the guilt phase of a trial, a criminal defendant has a right to remain free of physical restraints that are visible to the jury; that the right has a constitutional dimension; but that the right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum.

*Deck v. Missouri*, 544 U.S. 622, 628 (2005); *see also United States v. Hack*, 782 F.2d 862, 867 (10th Cir. 1986) ("In some circumstances where there are compelling reasons which would

justify the use of physical restraints, the prophylactic purpose of the general prohibition against the presence of shackles to insure a fair jury trial must necessarily yield to the competing interests of courtroom participants for the safe conduct and orderly progress of the trial.")  In light of this near consensus, the Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629.  The Court also recognized that concerns for physical discomfort no longer hold much weight in the shackling analysis. *Id.* at 630 ("Judicial hostility to shackling may once primarily have reflected concern for the suffering . . .  that 'very painful' chains could cause. More recently, this Court's opinions have not stressed the need to prevent physical suffering (for not all modern physical restraints are painful)." (quotation cleaned up)).

Here, Mr. Vano asks the court to relieve him from shackling "during transport and court appearances."  Doc. 33 at 1.  To the extent "court appearances" includes a trial in front of a jury, the court must weigh Mr. Vano's request against the interests of physical security, escape prevention, and courtroom decorum.  *See Hack*, 782 F.2d at 868.  The court should determine the nature and extent of security measures based on "'the person's record, the crime charged, his physical condition, and other available security measures.'"  *Id.* (quoting *Harrell v. Israel*, 672 F.2d 632, 638 (7th Cir. 1982) (per curiam)); *see also United States v. Wardell*, 591 F.3d 1279, 1293–94 (10th Cir. 2009) (applying the *Hack* factors to the use of stun belts, which could become visible to the jury if activated or spotted).

Though Mr. Vano's record includes two prior convictions for violent felonies, the government doesn't currently object to Mr. Vano's request to appear unshackled at trial.  Doc. 36 at 24.  And so, the court grants Mr. Vano's motion as it applies to appearances before the jury.

Should circumstances change and raise security or decorum concerns, the court still may require shackling or other measures at trial to mitigate those concerns, subject to record findings as required by *Deck* and *Hack*. But other court appearances—without a jury—and transport periods don't evoke the same presumption of innocence concerns. Nor does Mr. Vano's physical discomfort factor heavily into this analysis. *See Deck,* 544 U.S. at 630. So, the court denies Mr. Vano's motion to the extent it targets transport and court appearances not involving a jury.

## IV. Conclusion

The court denies Mr. Vano's Motion to Suppress (Doc. 22), Motion to Dismiss (Doc. 31), and Motion for a Bill of Particulars (Doc. 32). It grants in part and denies in part Mr. Vano's Motion for Relief from Shackling (Doc. 33).

In denying the Motion to Suppress, the court holds that the parolee/probationer exceptions to the warrant requirement—special needs and totality of the circumstances—apply to individuals on post-release supervision. Because the searching officers had reasonable suspicion to suspect Mr. Vano possessed firearms, the search was valid under the totality of the circumstances. What's more, the good faith exception to the exclusionary rule would apply to prevent suppression because SA Kramer reasonably relied on Kan. Stat. Ann. § 22-3717(k)(2) to justify the search. So, the court denies the Motion to Suppress.

In denying the Motion to Dismiss the Indictment, the court rejects Mr. Vano's argument that the court lacks subject matter jurisdiction. The charging statutes were duly enacted and 18 U.S.C. § 3231 confers jurisdiction. It also rejects Mr. Vano's argument that the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional under *Bruen*. Existing precedent, along with the history and tradition of firearm regulations that prohibit dangerous individuals from arming themselves, suggest the constitutionality of the felon-in-possession statute. Finally,

the court rejects Mr. Vano's argument that 26 U.S.C. § 5861(d) violates his right to fundamental fairness and is unconstitutional because it was promulgated under the taxing power.  Unless a "statute criminalizes possession of a firearm, a due-process or taxing-power challenge to a § 5861(d) conviction is doomed to fail."  *Cox*, 906 F.3d at 1182 (quotation cleaned up).  No statute prohibited possession of the silencers here, and so, Mr. Vano's argument fails.

In denying the Motion for a Bill of Particulars, the court finds that the Indictment sufficiently sets out the elements of the offense charged in Count 1, and Mr. Vano is not entitled to an explanation of whether or how the government will prove he possessed the ammunition or firearms.  And the government's failure to allege an interstate nexus for Count 2 doesn't justify a bill of particulars because Count 2 doesn't have an interstate nexus requirement.  So, Mr. Vano's arguments for a bill of particulars fail too.

At the last, the court gives Mr. Vano some relief by granting in part and denying in part his Motion for Relief from Shackling.  Because visible shackling in the presence of a jury presupposes guilt, and the government doesn't object to any form of shackling at trial, the court grants Mr. Vano's request to remain unshackled during court appearances in front of a jury.[6]  For other court appearances and transport periods, the court denies Mr. Vano's request because they don't raise the same presumption of innocence concerns.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Suppress (Doc. 22) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Dismiss (Doc. 31) is denied.

---

[6]      Should safety or decorum concerns arise before or during trial, the court reserves its discretion to require shackling or other measures at trial to mitigate those concerns.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Bill of Particulars (Doc. 32) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Relief from Shackling (Doc. 33) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 16th day of September, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
