IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ISAAC N. VANO,<br><br>        Defendant. | Case No. 23-20061-01-DDC |

### MEMORANDUM AND ORDER

On February 14, 2025, a jury convicted Isaac N. Vano of two charges: (1) felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and (2) receipt or possession of an unregistered firearm, a violation of 26 U.S.C. § 5861(d). *See* Doc. 1 (Indictment); Doc. 73 (Jury Verdict). This matter is before the court on Mr. Vano's Motion for Judgment of Acquittal on Count 2 (Doc. 74). Mr. Vano similarly moved at trial, and the court reserved judgment on the motion as it applied to Count 2. For reasons explained below, the court denies Mr. Vano's Motion for Judgment of Acquittal on Count 2.

**I.     Factual and Procedural Background**

Count 2 charged Mr. Vano with receipt or possession of unregistered firearms, specifically three silencers. *See* Doc. 1 at 2 (Indictment). Each one of the three silencers at issue were found inside an individual box, located on Mr. Vano's dresser. Officers located the dresser in Mr. Vano's bedroom, where he had slept almost every night for the two months between his release from prison and the officers' search. In fact, Mr. Vano was sleeping there just minutes before the search began. Various firearm paraphernalia—from the company Magpul—appeared on the dresser next to the silencer boxes. And Mr. Vano had purchased the Magpul items less than a month before the search, as evidenced by a packing slip bearing his name and address.

Mr. Vano's father testified. He explained that he and his wife had cleaned the defendant's room, removing all firearms, accessories, and paraphernalia after defendant entered custody in 2019. They did the same shortly before defendant's release on supervision and return to his parents' home. Mr. Vano, the father, testified he never had seen the silencer boxes before the officers searched Mr. Vano's bedroom. The silencer boxes themselves bore labels reading, among other things, ½-28. The jury heard testimony that this ½-28 label designates the silencers' thread pitch—and it's a common one. The jury also heard testimony that threading is the most common way a silencer attaches to a firearm. One of the silencer boxes was sealed shut. Another was closed, but not sealed. The final box was open. But the officers that testified couldn't remember whether the final silencer box was open when they arrived or if the officers had opened it during the search.

At trial, defendant made an oral motion for judgment of acquittal on both counts. The court heard the parties' arguments and denied the motion as it applied to Count 1. The court reserved its decision on Count 2. Mr. Vano followed with a written motion, post-trial. *See* Doc. 74. The motion asks the court to set aside the jury's guilty verdict on Count 2 because the evidence is "insufficient to show that Isaac Vano knew the specific features or characteristics of the devices in his bedroom that would require them to be registered." *Id.* at 1 (reflecting specific argument on one element of § 5861(d) charge).

Before the court assesses the merits of Mr. Vano's motion, it recites the legal standard for a judgment of acquittal, below.

## II.    Legal Standard

Fed. R. Crim. P. 29(a) provides: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Subsection (b) of

this rule also authorizes the court to reserve decision on a Rule 29 motion and decide it after the jury returns a verdict. Fed. R. Crim. P. 29(b). But, when the court reserves judgment on such a motion, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." *Id.*

When the court decides a motion for judgment of acquittal, it views the evidence in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999). The court's review is "very deferential" to the jury's verdict. *United States v. Woodmore*, 127 F.4th 193, 219 (10th Cir. 2025) (quotation cleaned up). That is, the court won't "overturn a jury's verdict unless no reasonable juror could have concluded, on the basis of the evidence presented, that the defendant was guilty of the crime charged." *Id.* (internal quotation marks and citation omitted). In other words, the court must uphold a guilty verdict if "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (emphasis in original) (quoting *United States v. Schluneger*, 184 F.3d 1154, 1158 (10th Cir. 1999)). The court considers both direct and circumstantial evidence, plus reasonable inferences drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993). But the court can't uphold a conviction based on "nothing more than piling inference upon inference . . . or where the evidence raises no more than a mere suspicion of guilt." *Woodmore*, 127 F.4th at 219 (ellipses in original) (internal quotation marks and citation omitted).

### III.    Discussion

To prove Mr. Vano is guilty of the crime charged in Count 2 of the Indictment, the government had to prove, beyond a reasonable doubt, that:

(1) On or about June 22, 2023, the defendant knowingly possessed a firearm;

  (2) The defendant knew the specific characteristics or features of the device that caused it to be registrable under the National Firearms Registration and Transfer Record;

  (3) The firearm was or could readily have been put in operating condition; and

  (4) The firearm was not registered to defendant in the National Firearms Registration and Transfer Record.

*See* Doc. 72 at 5 (jury instruction for 26 U.S.C. § 5861(d) charge in Count 2); Tenth Circuit Criminal Pattern Jury Instruction § 2.91.  Recall that the court's job is to "determine whether the evidence, if believed, would establish each element of the crime."  *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quotation cleaned up).  It's not to "weigh conflicting evidence or consider the credibility of the witnesses[.]"  *Id.*  Defendant's motion focuses on the first and second elements but clarifies that he "generally asserts the insufficiency of the government's evidence respecting all elements of the crime charged."  Doc. 74 at 1.  So, the court addresses all four elements.

  The court resolves two elements quickly and easily.  To establish the *third* element, the jury heard testimony from ATF firearms enforcement officer Eve Eisenbise about the silencer's operating condition.[1]  And, to establish the *fourth* element, the parties stipulated that the silencers were not registered to defendant.  So, a reasonable juror could conclude—beyond a reasonable doubt—that the government had proved the third and fourth elements.  The first and second elements require a bit more analysis.

---

[1] Officer Eisenbise testified that, for the silencers to function in sync with a firearm, the devices' end caps must have holes.  She testified that the silencer boxes in this case contained an *extra* end cap that the user would have to drill a hole in before use.  But the silencers already had affixed end caps—and those affixed caps already had holes.  Officer Eisenbise also testified that the silencers were completed devices.  From this testimony, a reasonable juror could conclude beyond a reasonable doubt that the silencer was in or readily could convert into operating condition.

For his key argument, defendant suggests the "government presented no evidence that Mr. Vano ever opened the boxes or handled the devices." Doc. 74 at 5. And defendant argues that's important—our Circuit has reversed § 5861(d) convictions absent evidence the defendant handled the charged devices. *Id.* at 6 (first citing *United States v. Michel*, 446 F.3d 1122, 1131 (10th Cir. 2006); and then citing *United States v. Valentich*, 737 F.2d 880, 881 (10th Cir. 1984)). Defendant appears to use this argument to refute the sufficiency of the government's evidence on the second element—knowledge of characteristics. *Id.* But *Valentich* concerned the first element—holding that the record evidence of possession "required inferences to be added one to the other" which was "much too speculative to withstand the motion for acquittal." 737 F.2d at 882. *Michel* concluded the evidence was sufficient to support possession, but insufficient to conclude defendant had knowledge of the device characteristics requiring registration. 446 F.3d at 1129–32. Neither case persuades here. Start with the first element—possession.

### A.     **First Element**

The first element of a § 5861(d) charge turns on whether defendant possessed the devices. "Constructive possession of an object exists when a person knowingly holds the power and ability to exercise dominion and control over it." *Michel*, 446 F.3d at 1128 (quotation cleaned up). If the defendant is in "exclusive possession of the premises where the object is found," the jury can infer knowledge, dominion, and control. *Id.* (quotation cleaned up). "The same is true as to [defendant's] intent to exercise command over their location." *United States v. Little*, 829 F.3d 1177, 1183 (10th Cir. 2016). An "inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." *Michel*, 446 F.3d at 1128–29 (quotation cleaned up).

In *Valentich*, the government presented evidence of a group conversation that included the defendant. 737 F.2d at 881. During the conversation, the defendant was instructed to move an unregistered silencer to another location and test it. *Id.* But nothing in the transcripts showed that defendant "had the device or took it anywhere." *Id.* at 882. And later, law enforcement officers seized a silencer at the location of the original conversation. *Id.* No evidence connected defendant to the device. *Id.* So, the government failed to "establish possession of a silencer by defendant." *Id.*

In Mr. Vano's case, the government's evidence doesn't rely on as tenuous a link as in *Valentich*. The silencers were found in Mr. Vano's bedroom, near the bed Mr. Vano slept in just minutes before the officers discovered the silencers. Mr. Vano solely occupied this bedroom in the months before his arrest. Other items belonging to Mr. Vano—Magpul firearm accessories purchased by Mr. Vano himself—were discovered on the dresser next to the silencer boxes. A reasonable juror could conclude beyond a reasonable doubt that Mr. Vano constructively possessed the silencers, inferring his knowledge, dominion, and control. *Michel*, 446 F.3d at 1128. The absence of evidence that he handled the devices isn't persuasive on the first element—possession.

**B.     Second Element**

The second element of this charge requires the government to prove Mr. Vano knew the "item he possessed had the characteristics that brought it within the statutory definition of a firearm"—*i.e.*, that he knew "the item he possessed was a silencer." *Rogers v. United States*, 522 U.S. 252, 254, 257 (1998). Put simply, the government needed to prove defendant knew "the device in question was 'for silencing, muffling, or diminishing the report of a portable

6

firearm[.]'" *United States v. Cox*, 187 F. Supp. 3d 1282, 1288 (D. Kan. 2016) (quoting 18 U.S.C. § 921(a)(25)).

Consider *Michel*'s treatment of this element. In *Michel*, the defendant briefly was a passenger in a vehicle where a sawed-off shotgun was found. 446 F.3d at 1126. The evidence showed that it was dark outside, and officers had to use flashlights to see inside the car. *Id.* at 1131. No evidence showed that Mr. Michel had handled or observed the shotgun found inside the vehicle. *Id.* Such evidence would've supported his knowledge that the device was sawed-off—a visual clue indicating knowledge of the device's characteristics. *Id.* Without that evidence, the government had relied on a series of hypotheticals to establish defendant's knowledge that the device was a sawed-off shotgun. *Id.* The prosecutor suggested Mr. Michel had placed the device in the backseat of the car after seeing the police, or that Mr. Michel had seen the gun earlier, when it was still light outside. *Id.* at 1130–31. The court concluded that though "the government's scenarios may not be unreasonable, the inferences required to support them are not undergirded by sufficient evidence to establish them beyond a reasonable doubt." *Id.* at 1131.

The problem in *Michel* doesn't present itself here. Unlike *Michel*, sufficient evidence supports reasonable inferences the jury properly may have drawn to find the second element beyond a reasonable doubt. So, the absence of evidence that Mr. Vano handled these specific devices doesn't negate the jury's finding on Count 2. Here's why. Mr. Vano emphasizes that the silencers were found in boxes on top of a dresser. Doc. 74 at 3–4. One box was taped shut. *Id.* at 4. Another was closed. *Id.* The third was open, but the government didn't establish who had opened it. *Id.* at 4–5. One witness testified that he didn't remember if the box was open when officers discovered it. *Id.* at 5.

7

Mr. Vano thus urges the court to apply the rule of equipoise. *Id.* at 3, 6. The rule of equipoise requires the court to vacate a conviction when "the evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence[.]" *United States v. Goldesberry*, 128 F.4th 1183, 1193 (10th Cir. 2025) (internal quotation marks and citation omitted). And if the possibly open box was all the evidence the record contained, Mr. Vano's argument might carry the day. But it's not.

The government focuses on this other evidence, arguing that a reasonable juror could conclude beyond a reasonable doubt that Mr. Vano knew the devices were silencers. Knowledge of the characteristics making the device a statutory firearm "can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon." *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994). Agent Temple testified that the silencer boxes bore labels designating their thread pitch. In this case, the labels included ½-28—a very common thread pitch, according to Agent Temple. Officer Eisenbise testified that threading is one of the most common ways a silencer attaches to a gun. And she testified that the silencers found in the defendant's room were threaded. The labels reading ½-28 constitute external evidence supporting an inference that Mr. Vano knew the devices in the boxes were silencers, even though there's no evidence Mr. Vano viewed the silencers themselves.

Circumstantial evidence includes, but isn't limited to, external indications. *United States v. Sanders*, 240 F.3d 1279, 1282 (10th Cir. 2001). In addition to the external indications on the box labels, the government presented other circumstantial evidence from which the jury could infer Mr. Vano's familiarity with the characteristics of the silencers. Mr. Vano's father testified that he cleared the room of all firearms and ammunition shortly before Mr. Vano returned to the residence after his release from prison—just two months before the bedroom's search. And until

the search, defendant's father never had seen the silencers. The silencer boxes were found in Mr. Vano's bedroom, where he had slept almost every night since returning home. And the boxes were found on Mr. Vano's dresser, alongside other firearm paraphernalia that he had purchased and had shipped to the house the month before. "Reasonable inferences supported by other reasonable inferences which have an evidentiary basis may warrant a conviction." *Michel*, 446 F.3d at 1128 (quotation cleaned up) (directing courts to measure the gap between fact and conclusion in such a situation).

Here, a reasonable juror could infer—without bridging too great a gap—that Mr. Vano brought the silencer boxes into his room and knew their contents. While there's no direct evidence that Mr. Vano had opened the boxes, the jury reasonably could infer Mr. Vano knew the devices in the three boxes were silencers, based on the other evidence of firearm paraphernalia, Mr. Vano's extensive use of the room, and his father's testimony excluding the possibility that he'd seen the boxes before.[2] *Cf. United States v. Laureano-Perez*, 797 F.3d 45, 74–76 (1st Cir. 2015) (concluding culmination of circumstantial evidence sufficient to infer defendant's knowledge that firearm was modified to fire automatically, despite absence of evidence that defendant opened bag containing firearm).

---

[2] There's also testimony that Mr. Vano's ex-wife delivered sealed boxes to the Vanos' home before Mr. Vano was released from prison. And Mr. Vano's father, when he cleared the room, didn't open those boxes. But it's not the court's job to reweigh the evidence or to draw different inferences than the jury drew. *See Vallo*, 238 F.3d at 1247 ("We must not weigh conflicting evidence or consider the credibility of witnesses, but simply determine whether the evidence, if believed, would establish each element of the crime." (quotation cleaned up)). It's to assess "all direct and circumstantial evidence admitted at trial as well as all reasonable inferences to be drawn therefrom." *United States v. Wasson*, 426 F. Supp. 3d 822, 825 (D. Kan. 2019) (quotation cleaned up).

The court concludes the jury drew a reasonable inference that Mr. Vano knew the devices in the boxes were silencers. "Although a different jury might have drawn different inferences, the jury's verdict . . . represents a permissible view of the evidence." *United States v. Lovern*, No. 07-10079-02-WEB, 2008 WL 11425377, at *7 (D. Kan. May 16, 2008).

**IV.     Conclusion**

Viewing the evidence in the light most favorable to the government, the jury's conclusions "flow[] from logical and probabilistic reasoning." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (quotation cleaned up).  The government doesn't pile inference upon inference.  *Woodmore*, 127 F.4th at 219.  And the evidence isn't in equipoise.  *Goldesberry*, 128 F.4th at 1193.  The court needn't conclude that *every* reasonable juror would find Mr. Vano guilty beyond a reasonable doubt.  *Woodmore*, 127 F.4th at 219.  Instead, the court may overturn a jury's conviction only if *no* reasonable juror could reach that conclusion.  *Id.*  Here, a reasonable juror properly could conclude—beyond a reasonable doubt—that Mr. Vano knew the devices in the boxes inside his room were silencers.  So, the court mustn't invade the jury's province by overturning Mr. Vano's conviction on Count 2.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Isaac N. Vano's Motion for Judgment of Acquittal on Count 2 (Doc. 74) is denied.

**IT IS SO ORDERED.**

**Dated this 13th day of May 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge
